**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **SHELLEY JOURNELL,** | : | **CASE NO. 1:11-CV-1163** |
| | : | |
| **Plaintiff,** | : | **MAGISTRATE JUDGE** |
| | : | **VERNELIS K. ARMSTRONG** |
| **vs.** | : | |
| | : | **MEMORANDUM OPINION** |
| **MICHAEL J. ASTRUE,** | : | **AND ORDER** |
| | : | |
| **Defendant.** | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g) of Defendant's final

determination denying her claim for Period of Disability and Disability Insurance Benefits (DIB)

under Title II of the Act, 42 U. S. C. §§ 405 et seq..  On September 8, 2011, the parties to this

action consented to have the undersigned Magistrate adjudicate all further proceedings and enter

judgment in this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73 (Docket No. 14).

Pending are the parties' briefs on the merits (Docket Nos. 17 & 20).  For the reasons that follow,

the Magistrate Orders that the Commissioner's Decision be Affirmed.

**I.  Procedural Background**

On July 8, 2005, the Plaintiff, Shelley M. Journell, filed her Title II application for Period

of Disability and Disability Insurance Benefits (Tr. 81-85).  On or about February 2, 2006

Plaintiff's application was approved on the basis that she was unable to withstand the stress

associated with day-to-day work activity (Tr. 38, 218-25, 254-55, 323-48).

On April 9, 2008, subsequent to a continuing disability review, the Social Security

1

Administration determined that Plaintiff's disability had ended on April 1, 2008 (Tr. 39-49, 46-48). On July 13, 2009, the Disability Hearing Officer upheld this determination upon reconsideration. (Tr. 41, 50-61).  On August 20, 2009, Plaintiff timely filed a request for a hearing (Ex. 66).  On February 10, 2010, a hearing was held before Administrative Law Judge (ALJ) Richard N. Staples with Plaintiff, represented by her attorney, medical expert Hershel Goren, M.D. and Vocational Expert Mark A. Anderson all giving testimony (Tr. 537-65).

On March 10, 2010, ALJ Staples issued a Notice of Decision-Unfavorable (Tr. 20-26). On March 16, 2010, Plaintiff requested review of the hearing decision (Tr. 13).  On April 19, 2011, the Appeals Council declined review (Tr.  6-9, 10). This left the ALJ's decision as the final decision of the Commissioner.

On June 7, 2011, Plaintiff filed her Complaint with this Court seeking judicial review pursuant to 42 U.S.C. § 405(g) (Docket No. 1).

## II.  Jurisdiction

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  McClanahan v. Commissioner of Social Security, 474 F.3d 830, 832-33 (6th Cir. 2006).

## III.  Factual Background

### A.  Plaintiff's History

Plaintiff was born on March 15, 1965 and was 38 years old when her disability benefits were terminated.  (Tr. 174).  She is a high school graduate and has past relevant work experience as a hospital unit clerk (light and semiskilled) and file clerk (light and semiskilled), bank clerk and grocery store cashier (Tr. 107 - 113, 122, 172, 174, 559 - 560).

Plaintiff stated that when she was informed that her disability was under review she indicated

that she would try to work if she were able, but that her depression keeps her from performing

daily chores, diminishes her concentration, memory, understanding and motivation, and reduces

her ability to carry out personal care (Tr. 68, 72-73, 131-132, 134, 136, 156 - 159, 162, 166-168).

After she stopped working in 2004, Plaintiff reported that her daily activities included looking

after her daughter, household chores, grocery shopping, preparing meals, spending time with her

family, reading and watching television (Tr. 99-106).

### B.  Relevant Medical Evidence and Opinion

●Late, 2005, Plaintiff was originally granted a period of disability due to Bipolar Disorder with
depression, anxiety and psychotic symptoms resulting in an inability to complete an eight hours
a day, 40 hours a week job or manage stress of full time work (Tr. 258). Additionally, a
12-month review to evaluate her stability assisted by treatment with medication and development
of coping skills was recommended (Tr. 258).

**Dr. David Dietz, Ph.D. - State Agency Reviewing Psychologist**
●In October 2005, Dr. Dietz observed that "recent psychiatric records indicated that Plaintiff
was improving, although not yet stabilized" (Tr. 238).

**Dr. Steven Meyer, M.D. -  State Agency Reviewing Physician**
●January 2006, Dr. Meyer, M.D. found that Plaintiff was "slowly improving, but is clearly not
yet stabilized or independent" (Tr. 258), and suggested a "12 month review for stabilization with
medication/treatment and development of coping skills" (Tr. 258).

●Plaintiff's condition was evaluated as part of the Commissioner's continuing disability review
process (Tr. 40).

**Alternative Paths**
●October 11, 2007, mental health records from Alternative Paths indicated enhanced symptoms
of depression and resulted in Plaintiff being prescribed Invega (Tr. 296).
●October 25, 2007, it was noted that Plaintiff showed improvement from her previous status and
was also provided with supportive psychotherapy (Tr. 294).
●November 8, 2007, it was noted that the Invega was providing benefit, Plaintiff was stable, but
had "lots of problems," including difficulty and exhibiting signs of increased stress (Tr. 291-
292). Additionally, supportive psychotherapy and advice about stress management techniques
were provided (Tr. 292).
●January 30, 2008, a psychiatric nurse reported that Plaintiff exhibited flat affect, complained of

depression, and looked stressed (Tr. 297).  However, it was also noted that she was not disoriented, her speech was coherent, she had good attention and adequate concentration.  Also, there was no evidence of a thought disorder, and she was not bothered by the pressure of tasks (Tr. 297 - 298).  Plaintiff's insight and judgment were viewed as superficial, and she also was determined to be seclusive as well (Tr. 297-98).

**Dr. James Raia, Ph.D. - Consultative Psychologist**
●March 2008 , Plaintiff evaluated by Dr. Raia, as part of the Commissioners' continuing disability review process (Tr. 300-303), and Plaintiff informed Dr. Raia that her daily activities included doing household chores, going grocery shopping, and looking for part-time work (Tr. 302).  Dr. Raia diagnosed Plaintiff with bipolar disorder and opined that Plaintiff's ability to withstand the stress and pressure associated with daily work activity was moderately impaired (Tr. 303).

**Dr. James Sunbury, Ph.D, - Examining Psychologist**
●March 19, 2008, Plaintiff was evaluated by Dr. Sunbury, pursuant to referral by the SSA, with a diagnosis of bipolar I disorder, a global assessment of functioning (GAF)[1] score of 52 and a determination that Plaintiff was mildly impaired in relating to others and moderately impaired in withstanding the stress and pressure associated with day to day work activity (Tr. 303).

**Dr. Vicki Casterline, Ph.D.- State Agency Reviewing Psychologist**
●April, 2008, assessed Plaintiff's condition (Tr. 305–22), and determined that her condition did not meet or medically equal a listed impairment (Tr. 309–22).  Dr. Casterline found that "[m]edical improvement has occurred" (Tr. 307), and she opined that Plaintiff was "able to carry out work tasks, interact with others, and tolerate routine job demands for speed and production" (Tr. 307).

Alternative Paths continued to provide Plaintiff with supportive psychotherapy (Tr. 349-55).

**Dr. David DeMuth, M.D. - State Agency Reviewing Psychiatrist**
●January, 2009, assessed Plaintiff's condition (Tr. 356–73), and determined that Plaintiff did not meet or medically equal a listed impairment (Tr. 360–73). He found that there had been "[s]ignificant medical improvement related to [Journell's] ability to work" (Tr. 358). Dr. DeMuth also noted that Plaintiff  "would be able to perform work which is simple and routine on

---

[1]  The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

4

a
sustained basis" (Tr. 358). Following the disability review, it was determined that Plaintiff was "responding very well to treatment, and continue[d] to retain psychological functioning that is within normal limits" (Tr. 46). Unlike in February 2006, when she was experiencing significant anxiety, auditory hallucinations, and paranoid delusions, there was no longer evidence of a thought disorder (Tr. 52). Plaintiff was determined to be able to understand instructions and maintain good attention and concentration (Tr. 52). She was no longer "bothered by the pressure of tasks" (Tr. 52). In all, the evidence established that Plaintiff's "ability to withstand the stress and pressure that is inherent in the workplace ha[d] increased" since the prior disability finding, such that she was able to "understand, remember and carry out a wide variety of simple to moderately complex tasks" (Tr. 52, 57).

**Dr. Rajeev Mehta, M.D. - Treating Psychiatrist from Alternative Paths**
●March 26, 2009,  treatment notes reveal that Plaintiff had a tremor and was tearful, depressed, and had passive suicidal ideation, including a diagnosis of bipolar disorder II, obesity and a tremor and assigned a GAF of 55 (Tr. 381-82).
●April 30, 2009, Dr. Mehta treated Ms. Plaintiff and noted that Plaintiff  initially exhibited a blunted appearance and then became tearful, had slow speech and a restricted affect, was depressed and tired, and expressed depressive ideation and an inability to work (Tr. 378).
●August 13, 2009, Dr. Mehta saw Plaintiff and noted that the Plaintiff was emotionally distant, had psychomotor retardation and poor eye contact, and exhibited slow speech, a depressed and blunted affect, and slowed cognition (Tr.375).
●October 22, 2009, Dr. Mehta saw Plaintiff who complained of depression, poor energy and concentration, hopelessness, helplessness and low self-esteem which had responded to multiple antidepressants and atypical anti-psychotics (Tr.507) and Dr. Mehta completed a medical source statement addressing Plaintiff's mental capacity identifying a poor ability to use judgment, maintain attention and concentration, respond appropriately to changes in routine settings, deal with the public, relate to co-workers, interact with supervisors, function independently, work in coordination with or in proximity to others, deal with work stress, complete a normal workday and work week, maintain appearance, socialize, behave in an emotionally stable manner, and relate predictably in social situations (Tr. 510 - 511). Dr. Mehta also stated that the findings that supported his assessment included Plaintiff's severely depressed mood, tearfulness, apathy, anhedonia, lethargy, poor drive, hopelessness, helplessness and isolation (Tr. 511).
●November 5, 2009, Plaintiff returned to Dr. Mehta regarding her bipolar disorder (Tr. 16). She had most recently been chronically depressed: her drive and energy were low; she was tired during the day; she was indecisive and she had reduced concentration (Tr. 516).

### C.  Hearing Testimony

Plaintiff's administrative hearing was conducted in February 2010 (Tr. 537–65).  Dr.

Hershel Goren, M.D., testified as an independent medical expert (Tr. 551–58), that Plaintiff's

bipolar disorder met the criteria of listing 12.04[2] from March 16, 2005 through March 17, 2008, but past that time period Plaintiff was determined to be able to perform full-time work with the only restriction being no high production quotas, by which he meant no assembly line work or work at which she gets paid at a piece rate (Tr. 553-54).

Plaintiff's counsel asked Dr. Goren about Dr. Mehta's comments -  that Plaintiff was not responding to multiple antidepressants and anti-psychotic medications and that she had poor concentration (Tr. 553-56). Dr. Goren responded that he thought there was a conflict between the evidentiary records and the conclusory records (Tr. 557).

The VE, Mark Anderson, also testified, that a hypothetical individual who shared Plaintiff's vocational profile and was capable of performing simple, unskilled, and repetitive low-stress work that did not involve high production quotas, could undertake a variety of jobs that existed in the regional economy, including small products assembler, housekeeper, and inspector/hand packager (Tr. 558–62).[3]

### D.  Other Evidence  - New Material Evidence

On July 15, 2010, subsequent to the February, 2010, hearing Dr. Mehta supplied an updated mental capacity assessment, which Plaintiff submitted to the Appeals Council (Tr. 535-36).  This assessment concluded that Plaintiff has a poor ability to use judgment, maintain

---

[2]  Plaintiff's original disability determination was not based upon the listings, but was made at step 5 of the sequential process based on an inability to complete an eight hours a day, 40 hours a week job or manage stress of full time work (Tr. 258).

[3]  Jobs identified by the VE include: assembler of small products, DOT number 739.687-030, light unskilled, SVP2, 165,000 nationally, 25,000 in Ohio, 2,500 in northeast Ohio; housekeeper, DOT number 323.687-014, light unskilled, SVP 2, 800,000 nationally, 38,000 in Ohio, 7,500 in northeast Ohio; inspector and hand packager, Dot number 559.687-074, light unskilled, SVP 2, 240,000 nationally, 22,500 in Ohio, 4,500 in northeast Ohio (Tr. 561-62).

attention and concentration, deal with the public, relate to co-workers, interact with supervisors, function independently, work in coordination with or in proximity to others, deal with work stress, complete a normal workday and work week, maintain appearance, socialize, behave in an emotionally stable manner, and relate predictably in social situations.

Dr. Mehta based this assessment on findings that included Plaintiff's depressed mood, inactivity, poor motivation, negative thinking, hopelessness, feeling overwhelmed, delusions of prosecution, limited insight and judgment, and inability to even motivate herself to get out of bed (Tr. 536).

Additionally, on March 17, 2010, Plaintiff filed a new application for SSI after receiving the hearing decision in the case before this Court. On August 11, 2010, this new application was approved, and on September 3, 2010,  the Notice of Award was filed with the Appeals Council.[4]

## IV. Analytical Overview: Determining Disability

DIB and SSI are properly awarded only to applicants who are determined to suffer from a "disability."  Colvin v. Barnhart, 475 F.3d 727, 730 (6th Cir. 2007), (citing, 42 U.S.C. § 423(a), (d)).    "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Colvin, supra,  (475 F.3d at 729), citing, 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); See also 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

---

[4]   The award notice is not part of the transcript of this case but was attached to Plaintiff's Brief on the Merits (Docket No. 17).

In determining disability under 42 C.F.R..§§ 404.1520 and 416.920, the ALJ must undertake a five step sequential analysis:

> **Step 1**: Determine whether the applicant is  engaged in "substantial gainful activity" at the time benefits are being sought.  If yes,  the applicant is not disabled. If no, then move to step 2.[5]
>
> **Step 2**: Determine whether the applicant suffers from any impairment which, either by itself or in combination with one or several other impairment, is "severe."  If there is no finding of a "severe" impairment, then there is no disability.  If there is a determination that the applicant suffers a "severe" impairment, move to step 3.[6]
>
> **Step 3**: Determine whether any previously identified severe impairment meets or equals a listing in the Listing of Impairments.  If yes, then the applicant is disabled.  If no, proceed to step 4.[7]
>
> **Step 4**: Determine if the applicant retains sufficient "residual functional capacity"[8] to allow for the performance of his past, relevant work .  If  the applicant possesses sufficient residual functional capacity to perform his past

---

[5]  Substantial gainful activity is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R § 404.1572(a) and 20 C.F.R § 416.972(b). "Gainful work activity" is work that is usually done for pay or profit, whether or not profit is realized.  20 C.F.R § 404.1572(b) and 20 C.F.R § 416.972(b).  If an individual engages in substantial gainful activity that person is determined not to be disabled, regardless of the severity of any otherwise identified impairments, mental or physical.

[6]  Under the regulations, an impairment or combination of impairments is "severe"if it significantly limits the individual's ability to perform basic work activities. Impairments are "not severe" where medical and other evidence establish only slight abnormalities, individually or in combination, that have no more than a minimal, adverse effect on the individual's ability to work. .  20 C.F.R § 404.1521 and 20 C.F.R § 416.921.

[7]  The previously identified severe impairment or combination of impairments must meet or medically equal an impairment listed in 20 C.F.R Part 404, Subpart P, Appendix 1.  20 C.F.R §§  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and  416.926.

[8]  A determination of the applicant's residual functional capacity must be done before the determination of whether applicant can perform past relevant work. .  20 C.F.R § 404.1520(e) and 20 C.F.R § 416.920(e).  An applicant's residual functional capacity is the ability to perform physical or mental work activities on a sustained basis even though the applicant may suffer limitations from his impairments. In making a residual functional capacity determination all the applicant's impairments, including those impairments that are not severe, must be considered.  20 C.F.R § 404.1520(e), 20 C.F.R §§ 416.920(e) and 416.945.

relevant work, then there is no disability.   If not, move to step 5. [9]
**Step 5**: Determine if there are jobs in the current economy that applicant could
perform, given the limits of her residual functional capacity and consistent with
the applicant's other relevant characteristics.  If there are such jobs, then the
applicant is not disabled.  If there are no such jobs, then the applicant is disabled.
[10]

See Heckler v. Campbell, 461 U.S. 458, 460, 76 L. Ed. 2d 66, 103 S. Ct. 1952 (1983), see also

Combs v. Comm'r of Soc. Sec., 400 F.3d 353 (6th Cir. 2005),  Jones v. Comm'r of Soc. Sec., 336

F.3d 469, 474 (6th Cir. 2003);  Preslar v. Sec'y of Health & Human Servs., 14 F.3d 1107, 1110

(6th Cir. 1994).  20 C.F.R. § 404.1520 (1982););  Tyra v. Secretary of Health and Human

Services, 896 F.2d 1024, 1028-29 (6th Cir. 1990),. Moon v. Sullivan, 923 F.2d 1175, 1181 (6th

Cir. 1990).

## V. The ALJ's Findings

**1**. On or about February 2, 2006, and pursuant to an application for a period of disability and
disability insurance benefits filed on July 8, 2005, Shelley M. Journell was found to be disabled
on the basis she was not able to withstand the stress associated with day-to-day work activity.
The February 2, 2006 determination approving Ms. Journell's application is also the most recent
favorable medical decision finding that Ms. Journell was disabled. This is known as the
"comparison point decision" (hereafter "CPD").

**2**. Following a continuing disability review, the Social Security Administration determined on
April 9, 2008 that Ms. Journell's disability had ended by April 1, 2008. As noted above in the
"Issues" section of this decision, Ms. Journell's disagreement with this determination is at the

---

[9]   Past relevant work means work performed either as the applicant actually performed it
or as it is generally performed in the national economy either within the past 15 years or 15 years
prior to the date the disability must be established. Additionally the work must have lasted long
enough for the applicant to have learned the job and for it to have become substantial gainful
activity for him.  20 C.F.R §§ 404.1560(b) 404.1565 and 20 C.F.R §§ 416.960(b) and 945.965.

[10]   The determination of whether the applicant can do any work at all must take into
consideration the applicants residual functional capacity along with the applicant's age,
education and work experience.  At this stage the burden is upon the Commissioner to show that
work exists in significant numbers within the economy that the applicant can do, given the
applicant's limiting characteristics.  20 C.F.R §§ 404.1512(g) 404.1560(c) and 20 C.F.R §§
416.912(g) and 945.960(c)    .

center of the request for hearing she filed on August 20, 2009.

**3.** Ms. Journell has not engaged in any disqualifying substantial gainful activity since the disputed April 1, 2008 disability cessation date (20 C.F.R.§ 404.1594(f)(1)).

**4.** At the time of the CPD, the Social Security Administration considered Ms. Journell to have the following "severe" impairment: bipolar disorder.

**5.** The medical evidence establishes that Ms. Journell has not developed any additional "severe" impairment(s) since the CPD. However, Ms. Journell continues to have the same "severe" impairment (bipolar disorder) that she had at the time of the CPD.

**6**. Since the disputed April 1, 2008 disability cessation date, Ms. Journell has not had an impairment (or combination of impairments) that has met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526).

**7**. Medical improvement had occurred by the disputed April 1, 2008 disability cessation date (20 C.F.R. § 404.1594(b)(1)).

**8.** The medical improvement that occurred as of the disputed April 1, 2008 disability cessation date was related to Ms. Journell's ability to work because it increased her capacity to perform basic work activities (20 C.F.R. § 404.1594(c)(3)(iii). More specifically, and with the exception of possible briefer periods of less than 12 continuous months, I find that, since April 1, 2008, Ms. Journell has retained the residual functional capacity to perform all basic work activities described in 20 C.F.R. §§ 404.1521 and 404.1545 within the following parameters: she has been restricted to performing no more than unskilled work that is considered low stress work (i.e., work that does not involve high production quotas) and that involves no more than simple, repetitive tasks.

**9.** None of the exceptions to the medical improvement rules apply (see 20 C.F.R. § 404.1594(f)(5); see also 20 C.F.R. §§ 404.1594(d) and (e)).

**10.** Ms. Journell has been unable to perform any past relevant work since the disputed April 1, 2008 disability cessation date (20 C.F.R. § 404.1565).

**11.** Ms. Journell has been considered to be a younger individual ever since the disputed April 1, 2008 disability cessation date (20 C.F.R. § 404.1563).

**12**. Ms. Journell has a high school education, and she is able to communicate in English (20 C.F.R. § 404.1564).

**13**. The presence or absence of transferable skills is not material to this decision because Ms. Journell has been limited to a range of unskilled work since the disputed April 1, 2008 disability cessation date (20 C.F.R. § 404.1568).

**14.** Having considered Ms. Journell's age, education, work experience, and residual functional capacity, I conclude that Ms. Journell has been capable of performing a significant number of jobs in the economy since the disputed April 1, 2008 cessation date (20 C.F.R. §§ 404.1560(c) and 404.1566).

**15.** Shelley M. Journell's disability ended on April 1, 2008, and she has not become disabled again since that date (20 C.F.R. § 404.1594(f)(8)).

(Tr. 20-26).

## VI. Standard of Review

10

District Court review of Commissioner of Social Security disability determinations is limited to evaluating whether the decision made by the Commissioner is supported by "substantial evidence" and consistent with applicable, legal standards.  Colvin v. Barnhart , supra, 475 F.3d at 729.  The district court shall affirm  the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence.  McClanahan v. Comm'r of Soc., 474 F.3d 830 at 833 (citing Branham v. Gardner, 383 F.2d 614, 626-627 (6th Cir. 1967)).  The Commissioner's findings as to any fact shall be conclusive if supported by substantial evidence. Id. (citing 42 U.S.C. § 405(g )).

"Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (citing Besaw v. Secretary of Health and Human Services, 966 F.2d 1028, 1030 (6th Cir.  1992)). See also Cutlip v. Sec'y of Health & Human Servs, 25 F.3d 284, 286 (6th Cir. 1994).

"The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)).

Moreover, because district court  review of the Commissioner's decision is, essentially, appellate in character, the court is not to undertake de novo review, and is restrained from attempting to resolve evidentiary conflicts as well as from  making credibility determinations. Cutlip, supra 25 F.3d 284, 286 (citing Brainard v. Secretary of Health and Human Services, 889

F. 2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F. 2d 383, 387 (6th Cir. 1984)).   Rather,

the reviewing court is bound to affirm the Commissioner's decision, provided that such decision

is supported by substantial evidence, even if the court were inclined to have decided the case

differently.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).  Where supported

by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence

favoring plaintiff's side.  Listenbee v. Sec'y of Health & Human Servs., 846 F.2d 345, 349 (6th

Cir. 1988).  The decision by the administrative law judge is not subject to reversal even where

substantial evidence could have supported an opposite conclusion.  Smith v. Chater, 99 F.3d 780,

781-82 (6th Cir. 1996).

## VII.  Issues Before the Court

This case raises two issues for review.

Issue No. 1.  Whether the Administrative Law Judge's Determination That Plaintiff's Bipolar
Disorder Was No Longer Disabling Was Premised upon Legal Error and Lacks the Support of
Substantial Evidence Given His Failure to Properly Evaluate the Opinion of Plaintiff's Treating
Physician.

Issue No. 2.  Whether Remand Is Warranted for Consideration of New and Material Evidence.

## VIII.  Discussion

### Issue No. 1:  Plaintiff's Bipolar Disorder and Treating Physician Opinion.

#### A.  Standard of Review: Cessation of Benefits

As discussed above, regarding standard of review, if the ALJ's decision is supported by

substantial evidence, the determination must stand regardless of whether this Court would

resolve differently the issues of fact in dispute. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th

Cir.

1983).  Where, as in the instant case, termination of benefits is at issue, the primary

consideration is whether: (1) the claimant's medical impairments have improved (2) to the point where she is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1). The baseline for the assessment of such improvement is measured from "the most recent favorable decision" that had determined that the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(I).

Additionally, notwithstanding the Commissioner's prior determination, there is no presumption of continuing disability.  Cutlip v. Secretary of Health and Human Services, 25 F. 3d 284, 286-287 n. 1 (6th Cir. 1994).  Rather, the Commissioner shall apply the procedures set forth in 20 C.F.R. §404.1594 to determine whether a claimant's disability has ended and whether that claimant is now able to return to work.  The decision to terminate benefits is "made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determine to be disabled." Cutlip, at 286-87.

The regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1).  Such a determination  "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)" and is related to a claimant's ability to work only "if there has been a decrease in the severity . . .  of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities . . ." 20 C.F.R. §§ 404.1594(b)(1) and 404.1594(b)(3). See also Nierzwick v. Commissioner of Social Security, 7 Fed. Appx. 358 (6th Cir. 2001).

Regarding the ability to engage in substantial gainful activity, the applicable regulations

incorporate many of the standards set forth in regulations governing initial disability determinations.  See 20 C.F.R. § 404.1594(b)(5) and (f)(7).  The primary difference is that, in context of the termination of benefits, the ultimate burden of proof lies with the Commissioner. Id.; Griego v. Sullivan, 940 F. 2d 942, 944 (5th Cir. 1991).

Plaintiff argues that the medical evidence proves that the ALJ erred in the first part of the evaluation process, as substantial evidence fails to demonstrate medical improvement of her bipolar disorder.  Plaintiff asserts that, when the Commissioner originally found Plaintiff to be disabled, that previous disability determination found that her bipolar disorder resulted in an inability to complete an eight hours a day, 40 hours a week job or to manage the stress of full time work (Tr. 258).  Plaintiff also argues that Administration's subsequent determination - that there was medical improvement in Plaintiff's condition and her period of disability ceased as of April 1, 2008 - was in error because there is no substantial evidence demonstrating a decrease in the medical severity of Plaintiff's impairment(s) when compared to the February, 2006 initial disability determination.  In this regard, Plaintiff argues that the ALJ failed to evaluate properly the findings and opinions of Plaintiff's treating psychiatrist, Dr. Mehta with regard to Plaintiff's RFC (Tr. 24-25).[11]

_____

[11]  Residual functional capacity (RFC) is an assessment of a claimant's ability to perform and sustain work-related physical and mental activities.  To be considered capable of performing a specific RFC, the claimant must be able to perform these activities on a regular and continuing basis, defined as "eight hours a day, for five days a week, or an equivalent work schedule." SSR 96-8p; White v. Commissioner of Social Sec., 312 Fed. Appx. 779 (6th Cir., 2009). The ALJ shall look at the evidence as a whole when making an RFC determination.  42 U.S.C. § 423(d)(5)(B).

As set forth in the regulations, the ALJ shall evaluate various factors in determining RFC, including the medical evidence and the claimant's testimony. Social Security Rulings 96-5p and 96-8p.  To show substantial evidence (and, thus, withstand the scrutiny of a reviewing court) medical evidence must support the ALJ's RFC determination. Dykes v.Apfel, 223 F.3d 865, 867

The ALJ found medical improvement on the basis of his determination that Plaintiff was not as depressed and could handle stress better than she could at the time her disability was granted (Tr. 23).  The ALJ found that Plaintiff was able to perform unskilled work that is considered low stress work (i.e., work that does not involve high production quotas) and that involves no more than simple, repetitive tasks (Tr. 24).  In support of his conclusions, the ALJ determined that Plaintiff's RFC was supported by the opinions of the medical expert and the reviewing state agency psychologists as well as the observations and opinions found in the report of the consulting psychologist (Tr. 25).

### B.  Observations and Opinions of Treating Source Dr. Mehta

Plaintiff directs the Court's attention to Dr. Mehta's patient notes, which reveal that on March 26, 2009 she had a tremor and was tearful, depressed, and had passive suicidal ideation (Tr. 381-82). Dr. Mehta diagnosed bipolar disorder II, obesity and a tremor and assigned a GAF of 55. On April 30, 2009, Dr. Mehta treated Plaintiff and found that she initially had a blunted appearance and then became tearful, had slow speech and a restricted affect, was depressed and tired, and expressed depressive ideation and an inability to work (Tr. 378).  Plaintiff again saw Dr. Mehta on August 13, 2009, where he remarked that she was emotionally distant, had psychomotor retardation, poor eye contact, exhibited slow speech, a depressed and blunted affect and slowed cognition (Tr. 375).  Later, on October 22, 2009, Plaintiff complained to Dr. Mehta

---

(8th Cir.2000) (per curiam); Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir.2000)).  As previously noted, in evaluating a claimant's RFC the ALJ may not selectively incorporate evidence to support his ultimate decision, but must look to the whole of a claimant's medical record..  See Rothgeb v. Astrue, 626 F.Supp.2d 797, 808 (S.D.Ohio May 06, 2009) ("by ignoring these notes, and focusing instead on other notes taken out of context, the ALJ erred"); see also Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir.1984) (remand based on an ALJ's improper "attempt to use only the portions [of the record] favorable to her position, while ignoring other parts").

of depression, poor energy and concentration, hopelessness, helplessness and low self-esteem which had responded to multiple antidepressants and atypical anti-psychotics (Tr. 507).

Also on October 22, 2009, Dr. Mehta completed a medical source statement regarding Plaintiff's mental capacity identifying a poor ability to use judgment, maintain attention and concentration, respond appropriately to changes in routine settings, deal with the public, relate to coworkers, interact with supervisors, function independently, work in coordination with or in proximity to others, deal with work stress, complete a normal workday and work week, maintain appearance, socialize, behave in an emotionally stable manner, and relate predictably in social situations (Tr. 510-11). Dr. Mehta stated that the findings supporting his assessment included Plaintiff's severely depressed mood, tearfulness, apathy, anhedonia, lethargy, poor drive, hopelessness, helplessness and isolation (Tr. 511).[12]

Thereafter, on November 5, 2009, Plaintiff again saw Dr. Mehta concerning her bipolar disorder (Tr. 516). She had most recently been chronically depressed, her drive and energy were low, she was tired during the day, she was indecisive and she had reduced concentration (Tr. 516).

Plaintiff argues that the ALJ gave lesser weight to Dr. Mehta's observations and opinions of Plaintiff's mental condition, and, in particular, her bipolar disorder, when determining whether Plaintiff's condition met the listings  in the five step sequential analysis, but asserted that the ALJ did not satisfy the his responsibility to analyze and explain the weight assigned to treating physician Mehta's opinion when determining the Plaintiff's RFC.

### 1.  The Treating Physician Rule

-----

[12]  See discussion of Dr. Mehta's 15, 2010 report, infra.

The treating physician rule imposes requirements on the manner in which the Commissioner both considers, and gives expression to, the opinions of a claimant's treating physician.  First, the Commissioner shall accord treating physician opinions appropriate deference consistent with the record evidence, and, second, the decisions and determinations that the Commissioner issues  must articulate, with appropriate specificity, the Commissioner's reasons for his handling of  treating physician opinions.

### a.  Treating Physician Opinion Accorded Deference

> 20 C.F.R. § 404.1527(d)(2) provides in pertinent part,
> If we find that a treating source's opinions on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

Where appropriate conditions are met, a treating physician's opinions are accorded "substantial, if not controlling deference."  Vance v. SSA, 260 F. App'x 801, 804 (6th Cir. 2008), Warner v. SSA, 375 F.3d 387, 390 (6th Cir. 2004).  The most emphatic application of this rule is that, where a treating physician's opinion is uncontradicted, such opinion is entitled to complete deference. Howard v. SSA, 276 F.3d 235, 240 (6th Cir. 2002), Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).

Where evidence does not warrant a treating physician's opinions being given controlling weight, treating physician opinions must, nonetheless, be evaluated in accordance with the criteria set forth in 20 C.F.R. § 404.1527(d)(2)(i) and (ii), which list such factors as duration of physician patient treatment relationship, number and frequency of examinations, nature and extent of the treatment relationship, and others.   That is, if  the ALJ declines to place controlling weight on the treating physician opinion, the ALJ must weigh that opinion in accordance with

17

the factors set forth in the Regulations - "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion." Wilson v. Comm'r of Social Security, 378 F.3d 541, 544-45 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2).

Notwithstanding the deference generally accorded treating physician opinions, the Sixth Circuit has consistently stated that "[the Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993).

The appropriate question is whether the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007). (citation omitted).  However, even if an ALJ finds that the opinion of a treating source is not entitled to controlling weight, this does not mean the opinion should be rejected.  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 408 (6th Cir. 2009).

It is also true, however, that a treating physician's opinions may be deficient.  See, Vance, supra, 260 F. App'x 801, 805 (physician's area of treatment differs from the medical issue about which physician opined); Gaskin v. Comm'r of Soc. Sec., 280 F. App'x 472, 474-75 (6th Cir. 2008) (physician's opinion conflicts with his treatment notes); Hamblin v. Apfel, 7 F. App'x 449, 451 (6th Cir. 2001) (treating physician's opinion was five years old).

Also, treating physician opinions are limited.  Thus, a treating physician's opinions on

18

issues such as whether the claimant is disabled or claimant's residual functional capacity, "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927(e); accord Warner v. Commissioner of Social Security, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).  As an interpretive rule "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 416.927(d)(4).

### b.  Decisions Must Articulate, With Specificity, Rationale for Weight Accorded Treating Physician Opinions

Where a treating physician opinion is not given controlling weight the Commissioner shall "give good reasons in [the] notice of determination or decision for the weight" accorded to such opinion.  20 C.F.R. § 404.1527(d)(2).  See, Wilson v. Comm'r of Social Security, supra, 378 F.3d at 544.  When denying benefits the Commissioners decisions shall,

> contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Id., citing. Social Security Ruling 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5.

See, also, Rogers v. Commissioner of Social Security, supra,  486 F.3d at 242.

The Wilson Court explained the two-fold purpose behind this procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless

19

some reason for the agency's decision is supplied." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

Wilson, 378 F.3d at 544.

Because the reason-giving requirement exists to "ensur[e] that each denied claimant receives fair process," the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Rogers, supra, 486 F.3d 234, 243. See also Blakley v. Comm'r of Soc. Sec., 581 F.3d 399 (6th Cir. 2009) (Sixth Circuit reversed decision of District Court upholding ALJ decision of nondisability and remanded to the Commissioner).   An ALJ's failure to go through the required analysis and comprehensively set forth the reasons for the weight assigned to a treating physician's opinion constitutes a lack of substantial evidence and necessitates remand, even where the conclusion may be justified by the record. Blakley, supra, 581 F.3d at 407; Hensley v. Astrue, 573 F.3d 263, 267 (6th Cir. 2009) (quoting Wilson, 378 F.3d at 545).

### C.  Treating Physician Rule and the Opinions of Dr. Mehta

Plaintiff argues that, consistent with the requirement of the treating physician rule, the opinion of Dr. Mehta should have been given controlling weight, since it was well supported by medically acceptable clinical and/or diagnostic techniques and was not inconsistent with other substantial evidence in the record.  Plaintiff further argues that even if the record does not support giving Dr. Mehta's opinion controlling weight, it should be given significant weight.

Plaintiff states that, as required by Wilson and Rogers, supra, Dr. Mehta has a significant

20

treatment relationship with Plaintiff, because Plaintiff and Dr. Mehta met approximately once a month and that Dr. Mehta, who is a psychiatrist, supported his opinions with clinical findings.

Plaintiff contrasts Dr. Mehta with Dr. Goren, and argues that the ALJ erred in ascribing substantial weight to the latter's opinion, considering that Dr. Goren had no treating relationship with the Plaintiff, never examined her and is a neurologist, not a psychiatrist.  Plaintiff also notes that the consulting and reviewing physicians were unaware of Dr. Mehta's findings and opinion (Tr. 21, 24-25, 552).

Plaintiff's argument is unpersuasive.  Contrary to the views articulated by Plaintiff, the ALJ based his disability determination on a thorough analysis of the record, including the observations and opinions of treating, consulting, and reviewing medical sources.  On these bases it was not unreasonable for the ALJ to conclude that Plaintiff's "mental functioning has improved with treatment since [February 2006], and that she is not as depressed as she was at the time of [the prior disability determination], and that she can handle stress better now than she could at [that] time" (Tr. 23).

Regarding the opinions of Dr. Mehta, who opined that Plaintiff's mental capacity was significantly impaired  (Tr. 510–11), the ALJ explained, that Dr. Mehta's opinion was "not supported by Journell's mental health records since the disputed April 1, 2008 disability cessation which regularly describe Journell as being psychiatrically stable" (Tr. 22). See Rabbers v. Comm'r of Soc. Sec., 582 F.3d 647, 660–61 (6th Cir. 2009) (ALJ may reject opinion that is not supported by objective medical evidence); see also Johnston v. Sec'y of Health & Human Servs., No. 93-1467, 1994 WL 198193, at *5 (6th Cir. May 19, 1994) (affirming rejection of physician's opinion because it was "out of proportion to his objective findings").

21

Among the evidentiary factors that informed the ALJ's decision was the January 30, 2008, treating medical source psychiatric nurse ( Lori. Withel (sp.) MSN) observation (who saw Plaintiff from October 11, 2007, through January 30, 2008) that Plaintiff was fully oriented, free of any thought disorders, and "not bothered by the pressure of tasks" (Tr. 23, 297–99). The ALJ also determined that Plaintiff was able to "relate to me and others" and had been able to "perform a wide variety of activities of daily living since April 1, 2008," which was "incompatible with a disabling mental illness" (Tr. 22).

The ALJ reasonably determined that, unlike Dr. Mehta's opinion, the assessments of Drs. Casterline, DeMuth, Raia, and Goren were consistent with the overall weight of the evidentiary record (Tr. 21–22, 300–03, 305–22, 356–73, 551–58). See McCann v. Califano, 621 F.2d 829, 832 (6th Cir. 1980) ("In our opinion, the Secretary had the right to and did resolve conflicting medical testimony which is not our function.").

The opinions of the ME, Dr. Goren are supported by the Plaintiff's medical record, as there is insufficient evidence to show that impairments or problems have interfered with Plaintiff's ability to perform basic work activities since April 1, 2008 (Tr. 21, 115-28). The ME's opinions are also supported by state agency psychologist review of April 1, 2008 and January 30, 2009 (Tr. 21, 300-303, 309-22, 360-73, 384, 386, 388, 389, 391, 393, 395, 397, 402, 404, 409, 410), as well as by information and opinions of the consulting psychologist from March.17, 2008 (Tr. 21, 300-303).

Treating psychiatrist Dr. Mehta's opinions are not supported by mental health records since April 1, 2008, where Plaintiff's mental health records establish that Plaintiff was not disabled (Tr. 22, 383, 384, 386, 388, 389, 391, 393, 395, 397, 402, 404, 409, 410). These

include records indicating that Plaintiff's has possessed the ability to relate to the ALJ and others since April 1, 2008 (Tr. 22, 300-303, 382, 544-51), and that Plaintiff has had the ability to perform a wide variety of activities that are incompatible with disabling mental illness since April 1, 2008 (Tr. 22, 115-28, 129-36, 137-44, 300-303, 544-51).

Additionally, the ALJ's opinion that Plaintiff has not had an impairment or combination of impairments that met or equaled a listing since April 1, 2008 was supported by the  March 17, 2008 consulting psychologist report (Tr. 23, 300-303), and is also supported by the opinions of the state agency medical consultants who reviewed the record (Tr. 23, 305-308, 309-22, 356-59, 360-73).

Lesser weight was given to the opinions of the treating psychiatrist Mehta (Tr. 382), because Plaintiff's mental functioning has improved since the CPD and she can handle stress better and she has exhibited overall improvement (Tr. 23, 297-99, 300-303, 305-308, 356-59, 381, 387, 416, 417).

The ALJ found that when he assessed Plaintiff's RFC Plaintiff's mental health records since April 1, 2008, Plaintiff had exhibited little ongoing pathology (Tr. 25, 383, 384, 386, 388, 389, 391, 393, 395, 397, 402, 404, 409, 410, 544-51).  Moreover, in assessing Plaintiff's RFC, the record established that Plaintiff was able to engage in fairly wide range of activities since April 1, 2008 (Tr. 25, 115-28, 129-36, 137-44, 300-303, 544-51).  Additionally, when assessing Plaintiff's residual functional capacity, the ALJ also took into consideration Plaintiffs' ability to relate adequately to the ALJ and others since April 1, 2008 (Tr. 25, 300-303, 382).  The ALJ's RFC was supported by the opinions of the consulting psychologist, who  evaluated Plaintiff on March 17, 2008 (Tr. 25, 300-303).

23

**D.  The ALJ Articulated Reasons for Giving Lesser Weight to the of Opinion of Treating Physician Dr. Mehta**

In his Decision the ALJ expressly articulated his reasons for according lesser weight to the October 22, 2009 opinion of treating psychiatrist Mehta (Tr. 21, 509-11).  According to the ALJ, Dr. Mehta's opinions were not consistent with the opinions of the ME as well as the opinions of the reviewing state agency psychologists as well as the consulting psychologist who examined Plaintiff on March 17, 2008 (Tr. 300-303).  Moreover the ALJ explained that Dr. Mehta's opinions were not supported by Plaintiff's health records since the April 1, 2008 disability cessation date because Plaintiff's records regularly describe her has being psychiatrically stable (Tr. 22, 383, 384, 386, 388, 389, 391, 393, 395, 397, 402, 404, 409, 410). Additionally, the ALJ noted that Plaintiff's treating psychologist stated, on March 26, 2009, that Plaintiff's GAF score was 55 (Tr.22, 23, 382).  And he stated that according to the Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association (1994) (DSM-IV) a GAF score between 51 and 60 indicates only moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). (Tr. 21-22).  The ALJ also noted that in January, 2008 a treating psychiatric nurse stated that Plaintiff would not be bothered by the pressures of simple, routine or repetitive workplace tasks (Tr. 23, 297-99, see also, 300-303, 305-308, 356-59, 381, 387, 416, 417).[13]

---

[13]   The following represents a brief summary of some of the substantial medical evidence supporting ALJ's determination that Plaintiff's disability had ceased as of April 1, 2008 and that lesser weight should be given to the October 22, 2009 opinion of treating physician Mehta.  Dr. David Dietz, Ph.D. - State Agency Reviewing Psychologist (Tr. 238);  Dr. Steven Meyer, M.D. - State Agency Reviewing Physician (Tr. 258); Alternative Paths (Tr. 291-92, 294, 297-98); Dr. James Raia, Ph.D. - Consultative Psychologist (Tr. 300-303); Dr. James Sunbury, Ph.D, -

**Issue No. 2:  Sentence Six Remand Request**

    **A.  Standard of Review for Sentence Six Remand**

    The Social Security Act allows a reviewing court to remand a case for consideration of additional evidence if the evidence is new and material and if there was good cause for the failure to incorporate the additional evidence into the record at the prior hearing. 42 U.S.C. section 405(g).  Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 711-712 (6th Cir. 1988); Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986); Wilson v. Secretary of Health and Human Services, 733 F.2d 1181, 1182-1183 (6th Cir. 1984); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680 (6th Cir. 1992).[14] The party seeking remand bears the burden of showing that it is proper under § 405(g).  Willis v. Secretary

---

Examining Psychologist (Tr. 303); Dr. Vicki Casterline, Ph.D.- State Agency Reviewing Psychologist (Tr. 305–22); Alternative Paths continued to provide Plaintiff with supportive psychotherapy (Tr. 349-55); Dr. David DeMuth, M.D. - State Agency Reviewing Psychiatrist (Tr. 46, 52, 57, 356–73); Issue No. 2: Remand on New Evidence.  For a more detailed presentation of this evidence, see, discussion in this Opinion, III, B Relevant Medical Evidence and Opinion, supra,

    [14]  Where evidence is "new"and "material" and "good cause" is shown for the failure to present the evidence to the ALJ, the case shall be remanded under, sentence six of 42 U.S.C § 405(g), to allow the Commissioner to consider the additional evidence.  Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).  It is the claimant's burden to show that a remand is appropriate. Foster, 279 F.3d at 357, citing Oliver v. Sec'y of Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986).  Evidence is "new" "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" Id., quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990).  Evidence is "material" "only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Foster, 279 F.3d at 357, quoting Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).  "Good cause" for failure to present the evidence to the ALJ is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357, citing Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (6th Cir. 1984) (per curia).

of Health and Human Services, 727 F.2d 551, 554 (6th Cir. 1984).

### B.  Plaintiff's Purportedly New Evidence

Plaintiff proffered two ostensibly new items of evidence to the Appeals Council. The first was a July 15, 2010 RFC assessment made by Plaintiff's treating psychiatrist, Dr. Mehta, which opined that Plaintiff possessed a poor ability to use judgment, maintain attention and concentration, deal with the public, relate to co-workers, interact with supervisors, function independently, work in coordination with or in proximity to others, deal with work stress, complete a normal workday and work week, maintain appearance, socialize, behave in an emotionally stable manner, and relate predictably in social situations (Tr. 535-536).   Dr. Mehta based these opinions on his determination that Plaintiff displayed the following characteristics, including, depressed mood, inactivity, poor motivation, negative thinking, hopelessness, feeling overwhelmed, delusions of prosecution, limited insight and judgment, and inability to even motivate herself to get out of bed (Tr. 536).

The second ostensibly new item of evidence was a Notice of Award showing that Plaintiff had been found disabled by the Social Security Administration as of March 17, 2010,[15] one week after the ALJ's March 10, 2010 decision.[16]

As to the first new item of evidence, Plaintiff argues that Dr. Mehta's RFC is new and material and there was good cause for the failure to incorporate the additional evidence into the

---

[15]   While the Notice of Award provided that Plaintiff was again eligible for benefits beginning March 17, 2010, the award was dispatched by Social Security on August 11, 2010.

[16]   The Appeals Council did not recognize receipt of this piece of new evidence, so Plaintiff requested that this Court consider the Notice of Award as material new evidence warranting remand.

record at the prior hearing.  Plaintiff asserts that the RFC is new since as it is an updated report arising out of Plaintiff's ongoing treatment relationship with Dr. Mehta.  Plaintiff also argues that the RFC is material since it further supports support the position that Plaintiff's bipolar disorder had not improved to the point she could work eight hours a day, five days a week. Finally, Plaintiff proposes that the RFC was prepared after the ALJ had issued his Decision and was submitted to the Appeals Council as soon as it was available.

As to the second new item of evidence, the March 17, 2010 Notice of Award, Plaintiff asserts that this Notice demonstrated that she had been found disabled by the SSA as of March 17, 2010, which was only one week following the ALJ's Decision in this case finding Plaintiff not disabled.  Plaintiff argues that the March 17, 2010 Notice of award is new as it arose from a new application to the SSA, that was necessitated by the ALJ's unfavorable determination in the instant case.  Plaintiff asserts that the Notice is material since it demonstrated that the Administration recognized Plaintiff's disability up until April 2008 and then again, only two years later, in March, 2010 with, apparently, similar conditions (Tr. 510-511, 535-536).  Plaintiff argues that, because the decision was previously unavailable and because the new application was filed only because the ALJ upheld the termination of Plaintiff's period of disability, the proffered Notice is new and material evidence.  Plaintiff asserts that had the ALJ been in possession of these records at the hearing, it is probable that he would have made a favorable determination given Dr. Mehta's findings and opinions and the new recognition of Plaintiff's disability.

### C.  Analysis of Plaintiff's Purportedly New Evidence

#### 1.  Notice of Award as New Evidence

Plaintiff's assertion that the new, March 17, 2010, Notice of Award, in and of itself, new evidence that compels remand is not supported by Sixth Circuit precedent.  The Sixth Circuit has held that a "subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 652–53 (6th Cir. 2009). . See Asbury v. Commissioner of Social Security, 83 Fed. Appx. 682, 685 (6th Cir. 2003) (a claimant cannot "bootstrap her success" on a subsequent application for benefits to change the burden of proof in the present proceedings "so as to require the Commissioner to find disability for the earlier period unless the agency can demonstrate a change in [his] condition.")

The Supreme Court explained the meaning sentence six of § 405(g) in Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991):

> The district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that  was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.

Accordingly, under sentence six, the mere existence of the subsequent, favorable decision does not, in and of itself, constitute evidence that can change the outcome of a claimant's earlier proceeding. "A subsequent favorable decision may be supported by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence."  Allen v. Comm'r of Soc. Sec., supra, 561 F.3d at 653.

Therefore, for the reasons discussed above, as to the second of the two ostensibly new and material evidentiary bases upon which Plaintiff seeks her sentence six remand - the subsequent, favorable, March 17, 2010 Notice of Award - Plaintiff's request for remand is denied.

28

### 2.  Other New Evidence

The remaining question is whether Dr. Mehta's July 15, 2010 statement is evidence that is new and material, with good cause existing for it not being presented at the previous proceeding, such that it would support a sentence six remand.

The following time line is relevant to Plaintiff's Issue No. 2 claim that this case should be remanded for new evidence. The ALJ conducted the administrative hearing in the case at bar on February 10, 2010, (Tr. 537-65) and he issued the decision terminating Plaintiff's earlier benefits award on March 10, 2010 (Tr. 15-27).[17]  On February 15, 2011, the SSA sent correspondence to Plaintiff's counsel advising that Plaintiff would be allowed to submit additional information (Tr. 11-12).  On April 19, 2011, the Appeals Counsel issued an Order specifying that it had received the following additional information: Exhibit AC-1: Medical records from Alternative Paths, Inc. dated December 3, 2009 to June 10, 2010;  and Exhibit AC-2: Mental assessment from Dr. R. Mehta dated July 15, 2010 (Tr. 10).  Also on April 19, 2011, the Appeals Counsel issued its denial of Plaintiff's request for review (Tr. 6-9).

> In its Notice, the Appeals Counsel stated, in the section entitled "What We Considered"
>
> In looking at your case, <u>we considered</u> the reasons you disagree with the decision <u>and the additional evidence listed on the enclosed Order of Appeals Counsel</u>.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision. . . .
>
> Also, the Appeals Counsel considered the fact that since the date of the Administrative Law Judge's decision, you were found to be under a disability beginning March 11, 2010, based on the application(s) you filed on March 17,

---

[17]   Plaintiff filed a new application for Supplemental Security Income on March 17, 2010 after receiving the hearing decision. This new application was approved on August 11, 2010 and the Notice of Award was filed with the Appeals Council on September 3, 2010.

29

2010, however the Council found that this information does not warrant a change in the Administrative Law Judge's decision.[18]

(Tr. 6-7) (emphasis added).

Thus, as established in the time line, Dr. Mehta's July 15, 2010, mental assessment (along with new medical records from December 3, 2009 to June 10, 2010), while not available to the ALJ at the time he issued his Decision (March 10, 2010), was in the possession of, and considered by,  the Administrator prior to the Appeals Counsel's decision of April 19 2010

Regarding this evidence Defendant argues that

 [s]uch evidence cannot be considered part of the record for purposes of substantial evidence review. Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996) [, but] [a] reviewing court can, however, remand the case for further administrative proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g) where the evidence is new and material, and good cause existed for not presenting it in the prior proceeding. 42 U.S.C. § 405(g)

(Docket No. 20, p.6).

However, as to evidence submitted to the Appeals Council that had not previously been submitted to an Administrative Law Judge, the Sixth Circuit has also stated:

When new and material evidence is submitted to the Appeals Council,  . . . the newly submitted evidence is to become part of what we will loosely describe here as the 'administrative record,' even though the evidence was not originally included in the ALJ's record. If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material. If, as here, the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and

_____

[18]  Interestingly, at footnote no. 4 of Plaintiff's Brief she asserts, "[a]s previously noted, that Appeals Council did not recognize receipt of this piece of new evidence [the Notice of Award issued on August 11, 2010, pursuant to Plaintiff's new March 17, 2010 SSI filing] so Plaintiff requests that this Court consider the Notice of Award as material new evidence warranting" (Docket No. 17, p. 17).  Whether the Appeals Council recognized receipt of this "piece of new evidence" it is clear that it was cognizant, and did take account, of Plaintiff's Notice of Award.

30

determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision.

Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992) (emphasis added).

Thus, based on Nelson, supra, Dr. Mehta's July 15, 2010 report and the December 3, 2009 to June 10, 2010 medical record evidence would not be new evidence pursuant to a sentence six remand review. Moreover, even if it were assumed that these evidentiary submissions were to constitute "new" evidence from the perspective of a sentence six remand analysis, it would not necessarily mean that remand was warranted, since it would also be necessary to determine whether the evidence was "material."

As noted above, evidence is "material" from the perspective of a sentence six remand analysis only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Foster, 279 F.3d at 357.

A close comparison and review of Dr. Mehta's October 22, 2009 report and his July 15, 2010 report reveals that, despite there being differences in the opinions expressed by Dr. Mehta in these two reports, the differences are not so significant as to support the finding that there is a reasonable probability that the Commissioner would have reached a different conclusion regarding Plaintiff's disability had this evidence been presented.[19] In the instant case, Plaintiff

---

[19] Dr. Mehta's October, 2009 and July, 2010 reports are identical in the following determinations: The two statements are identical as follows:
I. Making Occupational Adjustments: 1. Follow work rules, Fair; 2. Use judgment, Poor; 3. Maintain attention and concentration, etc. Poor; 4. Respond appropriately to changes, etc., Poor; 5. Maintain regular attendance, etc., Fair; 6 Deal with the public, Poor; 7. Relate to co-workers, Poor; 8. Interact with supervisor(s), Poor; 10. Work in coordination or proximity to others, etc.; Poor
III. Making Personal and Social Adjustment: 5. Management of funds/schedules October, 2009,

has not established that treating psychiatrist Mehta's July, 2010 opinion would be any more persuasive than his October, 2009, opinion.  A comparison of Dr. Mehta's October, 2009 statement and his July, 2010 statement show them to be, while not identical, not so different that it is reasonably probable that the ALJ's determination would be different.

The two statements differ as follows:

I.  Making Occupational Adjustments
      9.  Function independently without special supervision
          (October, 2009)      Poor (One checkmark)
          (July, 2010)          Poor (Two checkmarks)
      11. Deal with work stresses
          (October, 2009)      Poor (One checkmark)
          (July, 2010)          Poor (Three checkmarks)
      12. Complete normal workday and work week, etc
          (October, 2009)      Poor
          (July, 2010)          Poor. with note: "can't even motivate self to get out of bed"
II.  Intellectual Functioning
      1.  Understand, remember complex job instructions
          (October, 2009)      Poor
          (July, 2010)          Between fair and poor
      2.  Understand, remember detailed, but not complex job instructions
          (October, 2009)      Poor
          (July, 2010)          Between fair and poor
      3.  Understand, remember simple job instructions
          (October, 2009)      Fair
          (July, 2010)          Good
III.  Making Personal and Social Adjustment
      1.  Maintain appearance
          (October, 2009)      Poor
          (July, 2010)          Poor, with note: "unkempt"
      2.  Socialize
          (October, 2009)      Poor
          (July, 2010)          Poor, with note: "no"
      3.  Behave in an emotionally stable manner

---

with note: "unknown", July, 2010, with note: "I don't know;" 6.  Ability to leave home on own October, 2009, with note: "unknown (transportation issues)," July, 2010, with note: "she doesn't" (Tr. 510-11, 535-36).

|  | (October, 2009) | Poor |
|  | (July, 2010) | Poor, with note: "tearful, no eye contact" |

4. Relate predictably in social situations

|  | (October, 2009) | Poor |
|  | (July, 2010) | Poor, with note: "withdrawn" |

Medical/clinical findings that support the assessment and other comments or limitations

|  | (October, 2009): | depressed mood (severe), tearful, apathetic, anhedonic, lethargic, poor drive, hopeless, helpless, isolative |
|  | (July, 2010): | depressed mood, major inactivity, poor motivation, negative thinking, hopelessness, feels overwhelmed, delusion of persecution, insight and judgement limited |

Indeed it is worth noting that under section II of the report, Intellectual Functioning, Plaintiff actually showed <u>improvement</u> from October, 2009 to July, 2010 in each of the three areas that comprise that section of the report.  Moreover, in section III of the report, Making Personal and Social Adjustment, the four areas where Dr. Mehta opined that Plaintiff did exhibit a difference from October, 2009 to July, 2010, i.e., (1) Appearance, (2) Socialization, (3) Behaving in an emotionally stable manner and (4) Relating predictably to others Dr. Mehta's assessments showed differences only as to characteristics of marginal significance, e.g., appearance "unkempt," socialize :"no," etc.  The only portion of the report, that arguably could be characterized as indicating significant differences was section I, Making Occupational Adjustments, where it appeared that Dr. Mehta intended to indicate increased intensity by having multiple checkmarks in the categories of (9) Functions independently without special supervision and (10) Deals with work stress.  However, looking at the July, 2010 report as a whole and comparing it with the October, 2009 report does not reveal a difference that, with reasonable probability, would have lead to the Commissioner to have made a different determination.

Accordingly, Plaintiff has not met her burden of showing the proffered evidence was

either new or material such that a sentence six remand is warranted in this matter. Moreover, even if, pursuant to Nelson, supra, the Court were to include and consider Dr. Mehta's July 15, 2010 report as record evidence in this case and, thus, incorporate it into a "substantial evidence" analysis, this Court would still find that the ALJ's determination - that Plaintiff had ceased being disabled as of April 1, 2008 - was based on substantial evidence. (See, discussion of Issue No. 1 in this Opinion, supra.)

Therefore, based on the foregoing, this Court finds that there is no basis for ordering a sentence six § 405(g) remand in this case and that there is substantial evidence for the ALJ's Decision of March 10, 2010.

## IX. Conclusion

For these reasons, the Magistrate Orders that Commissioner's Decision is Affirmed.


s/ Vernelis K. Armstrong
United States Magistrate Judge


Date: May 8, 2012